# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MONTEZ L. FULLER,

Petitioner,

v.                                            No. 10-cv-267-DRH

UNITED STATES OF AMERICA,

Respondent.

## ORDER

**HERNDON, Chief Judge:**

Now before this Court is petitioner Montez Fuller's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government opposes petitioner's motion (Doc. 10). Additionally, petitioner has filed a motion for evidentiary hearing (Doc. 21). For the following reasons, petitioner's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) and his motion for evidentiary hearing (Doc. 21) are **DENIED**.

## I.    Introduction and Background

In June 2006, petitioner participated in two bank robberies in Granite City and Alton, Illinois along with Clarence Thomas, Bonnie and Levada Brown, and Phillip Bailey. *See United States v. Fuller*, 06-cr-30117-DRH.[1] Both robberies involved firearms, and shots were fired in the second. Bonnie Brown was

---

[1] The Court notes that petitioner's criminal case was initially before Judge G. Patrick Murphy. However, the case was reassigned to Chief Judge David R. Herndon due to a family emergency on August 24, 2007 (06-cr-30117, Doc. 232). Thus, references throughout this Order to the "Court," denote proceedings before both Judge Murphy and Judge Herndon interchangeably.

arrested the day of the robbery, who later implicated petitioner. Petitioner was arrested on June 19, 2006, and indicted on August 18, 2006. On August 30, 2007, a jury found petitioner guilty of aggravated bank robbery, in violation of 18 U.S.C. § 2113(a) and (d)(2) (Counts 1 and 3) and of using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and (2) (Counts 2 and 4). (06-cr-30117, Docs. 249-252). Defense counsel John Stobbs represented petitioner. However, on September 25, 2007, Stobbs moved to withdraw as petitioner's attorney. The Court granted said motion on October 31, 2007. On November 5, 2007, the Court appointed defense counsel Robert Elovitz to represent petitioner.

On January 18, 2008, while represented by Robert Elovitz, the Court sentenced petitioner to a total term of 564 months on Counts 1-4. Petitioner received 125 months on Count 1 and 180 months on Count 3, to be served concurrently. Petitioner received 84 months on Count 2, to run consecutively to Counts 1 and 3, and 300 months on Count 4, to run consecutively to Count 2. Additionally, the Court sentenced petitioner to five years of supervised release, ordered restitution in the amount of $58,316.00, and ordered a special assessment of $400.00 (06-cr-30117, Doc. 339).

On January 23, 2008, petitioner filed a Notice of Appeal. On February 1, 2008, after petitioner's sentencing and prior to the filing of any briefs on appeal, Robert Elovitz moved to withdraw as petitioner's counsel. The Seventh Circuit granted said motion on March 5, 2008, and appointed Amanda Sonneborn to

represent Petitioner on appeal. On direct appeal, petitioner argued that the trial court's actions violated his statutory and constitutional rights to a speedy trial. The Seventh Circuit Court of Appeals rejected this argument. *United States v. Fuller*, 306 F. App'x 297, 298-99, 301 (7th Cir. 2009), *cert. denied*, 129 S. Ct. 2037 (2009). Specifically, the Seventh Circuit held the delays between defendant's indictment and trial were excusable under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8). *Id.* at 299. Further, the court held the delays did not violate petitioner's Sixth Amendment speedy trial right. *Id.* at 301.

Following the affirmance of petitioner's conviction on direct appeal, petitioner filed a motion for new trial on November 16, 2009 (06-cr-30117, Doc. 403); *see* FED. R. CRIM. P. 33. Relevant to petitioner's motion, prior to petitioner's trial, federal prosecutors disclosed to him that $4,100.00 found in petitioner's hotel room at the time of his arrest was stolen from the Alton Police Department's evidence vault. Further, the prosecutors informed petitioner that Mickey Dooley, an Alton police officer, was the only suspect. No evidence of the theft was presented at trial, as the government did not present Dooley as a witness, nor did it introduce evidence Dooley handled. Dooley was convicted of the theft approximately a year following petitioner's trial.

Petitioner's Rule 33 motion argued that Dooley's conviction constituted newly discovered evidence undermining his own convictions. This Court denied petitioner's motion as untimely, as petitioner knew of Dooley's investigation before trial (06-cr-30117, Doc. 425). Thus, as petitioner did not in fact present newly

discovered evidence, his motion required filing within Rule 33's seven-day deadline. Further, the Court reasoned even if petitioner had filed a timely Rule 33 motion, Dooley's guilt was not material to petitioner's convictions and would not warrant a new trial.

The Seventh Circuit affirmed the denial of petitioner's Rule 33 motion on May 19, 2011. *United States v. Fuller*, 421 F. App'x 642, 645-46 (7th Cir. 2011).[2] The Seventh Circuit agreed that Dooley's theft did not constitute new evidence. Thus, his motion was untimely. Moreover, the court noted Dooley's theft was irrelevant to petitioner's bank robbery charges, and that Dooley's later conviction, "did not inject significance into the previously disclosed theft." *Id.* at 645. As the government did not submit evidence Dooley handled, the Seventh Circuit held Dooley's guilt was immaterial to petitioner's convictions. *Id.*

While awaiting the Court's ruling on his Rule 33 motion, petitioner timely filed the instant § 2255 petition on April 12, 2010 (Doc. 1). Petitioner makes the following seven allegations in his § 2255 motion: (1) he was denied a speedy trial within the constraints of the Speedy Trial Act (18 U.S.C. § 3161); (2) he was denied due process due to the introduction of unreliable evidence and testimony; (3) his counsel was ineffective in failing to investigate government witnesses and failing to challenge warrantless searches; (4) he was denied his choice of counsel despite a conflict; (5) his counsel was ineffective in failing to present evidence that other suspects had committed the robbery that he was charged with; (6) his

---

[2] In the same Order affirming the Court's denial of petitioner's Rule 33 motion, the Seventh Circuit vacated in part an Order of the Court denying petitioner's motion for return of his property. However, that issue is not relevant to petitioner's instant § 2255 petition.

counsel was ineffective in failing to attempt to suppress the testimony of government witness Joyce Pursell; and (7) his counsel was ineffective in failing to file a motion for a new trial after discovery of new evidence.

## II. Petitioner's § 2255 Petition is Denied

### a. Law

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). A prisoner may move to vacate, set aside or correct his sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Relief under § 2255 is "reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)). A collateral attack pursuant to § 2255 is not a substitute for a direct appeal. *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2005). Unless a movant demonstrates changed circumstances in fact or law, a movant may not raise issues already decided on direct appeal. *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995). Further, generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States,* 538 U.S. 500,

504 (2003); *accord Levine v. United States,* 430 F.2d 641, 642–43 (7th Cir. 1970); *see also Belford v. United States,* 975 F.2d 310, 313 (7th Cir.1992), *overruled on other grounds by Castellanos v. United States,* 26 F.3d 717, 719–20 (7th Cir. 1994) (nonconstitutional issues that could have been raised on appeal but were not are procedurally defaulted).

However, a court may consider constitutional issues that were not raised on appeal if the petitioner can demonstrate either (1) good cause for not raising them on appeal and actual prejudice from not raising them, or (2) that the district court's refusal to consider them would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

Petitioner's various grounds for relief include numerous allegations of ineffective assistance of counsel. Relevantly, "the usual procedural default rule," does not apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (citing *Massaro*, 538 U.S. at 504); *see also Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004). To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances,

the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the second prong, petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Porter v. Gramley*, 122 F.3d 351, 353 (7th Cir. 1997) (citation omitted). A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

### b. Application

### 1. Ground One: Denial of a Speedy Trial

Petitioner first claims this Court denied him a speedy trial within the constraints of the Speedy Trial Act, 18 U.S.C. § 3161. Petitioner admits in his § 2255 petition that he raised this issue on direct appeal. In reviewing the merits of petitioner's claim of a Speedy Trial Act violation, the Seventh Circuit held his delays were excusable under the Act. *Fuller*, 306 F. App'x at 299. "In the context of § 2255 petitions, the 'law of the case' doctrine dictates 'that once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." *Fuller*, 398 F.3d at 648 (citing *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986)).

Petitioner claims, "recent decisions from the Supreme Court, and other circuits, have altered the landscape in this area." Thus, petitioner claims a change in the law since the time of his direct appeal constitutes a "good reason" for reexamining the Seventh Circuit's holding. However, petitioner does not provide the Court with the case law he argues has "altered the landscape" as to the Speedy Trial Act. Despite petitioner's failure to provide such necessary authority to the Court, both the Court and governments' attempts to uncover this alleged case law have proven fruitless.

As the government correctly states, *Bloate v. United States*, --- U.S. ----, 130 S. Ct. 1345 (2010), represents the only Supreme Court decision decided between petitioner's final judgment on direct appeal, January 5, 2009, and the filing of his § 2255 petition, April 12, 2010. *Bloate* examined, "whether time granted to a party to *prepare* pretrial motions is automatically excludable from the Act's 70–day limit under subsection (h)(1), or whether such time may be excluded only if a court makes case-specific findings under subsection (h)(7)." *Id.* at 1349. On direct appeal, petitioner argued "the delay between his superseding indictment and arraignment, along with the court's continuance without ends-of justice findings, violated the spirit of the [Speedy Trial] Act" and that "the time excepted from the clock and the rule that the clock starts running when the last codefendant is arraigned are merely 'technical exceptions.'" *Fuller*, 306 F. App'x. at 299. Thus, the holding of *Bloate* is irrelevant to the Seventh Circuit's finding that the delays in petitioner's trial were excusable under the Speedy Trial Act.

Further, the only Supreme Court case decided since the filing of petitioner's § 2255 petition determining Speedy Trial Act issues, similarly examined issues unrelated to petitioner's claims. *See United States v. Tinklenberg*, --- U.S. ----, 131 S. Ct. 2007, 2011-2017 (2011) (holding that filing of a pretrial motion falls within Speedy Trial Act's exclusion irrespective of actual delay in starting trial, and that weekend days and holidays are included in ten-day period of Speedy Trial Act provision excluding delay resulting from transportation of defendant). Thus, *Tinklenberg* similarly demonstrates the "landscape" of the Speedy Trial Act as it relates to petitioner's claims raised on direct appeal has not changed. Thus, as "good reason" does not exist for reexamining petitioner's speedy trial claim, it is precluded from reexamination in this Court.

### 2. Ground Two: Denial of Due Process and Fair Trial Based on Introduction of Unreliable Evidence/Testimony

Petitioner next claims he was denied due process due to the introduction of unreliable evidence and testimony and thus denied a fair trial. Specifically, petitioner claims, "[t]he lead investigator [Dooley] of at least one of the bank robberies was found guilty of stealing the recovered monies from the property vault of the police department," and the prosecution "relied upon" evidence Dooley collected. As evidence of Dooley's illegal behavior was not presented to the jury, petitioner claims the jury was "deprived" of "critical evidence essential to weighing the proof and reaching an informed decision." Petitioner claims the government's repeated contention that evidence of Dooley's illegality was immaterial to petitioner's case is false. In support, petitioner claims "Dooley was

responsible for having written down the serial numbers of various bills constituting 'bait' money allegedly stolen from the banks." Thus, petitioner claims, "jurors would have dismissed the government's evidence/testimony relating to said 'bait' money, and that some of the bait bills were found in petitioner's possession." Additionally, in an allegedly related vein, petitioner claims his co-defendant, Bonnie Brown, "was permitted to smoke marijuana during her proffer session with authorities," which "constituted a bribe [under] 18 U.S.C. § 201, or unlawful inducement, which resulted in false statements against this petitioner." In support, petitioner claims he viewed an alleged recording of Brown's proffer.

The government contends that petitioner's allegations are patently false. Moreover, it argues his claims do not present a constitutional issue, and because petitioner did not raise the issue on direct appeal, he is now procedurally barred from doing so. *See Belford*, 975 F.2d at 313. The Court agrees that it is precluded from reviewing the merits of petitioner's above-stated claims relating to Dooley's illegal behavior. As explained above, since the filing of the government's response to the instant petition, the Seventh Circuit affirmed this Court's denial of petitioner's motion for new trial. *See Fuller*, 421 F. App'x at 645-46. The gist of petitioner's instant contentions mirror those made in his motion for new trial, as he stated Dooley's conviction constituted newly discovered evidence which undermined his conviction, as the government produced evidence Dooley processed at trial (*See* 06-cr-30117, Doc. 403).

The Seventh Circuit stated in its affirmance of the denial of petitioner's Rule 33 motion, "Dooley's theft was irrelevant to the charges of bank robbery for which [petitioner] was tried, and Dooley's eventual conviction did not inject significance into the previously disclosed theft . . . the government did not submit evidence handled by Dooley. Because Dooley's guilt is immaterial to [petitioner's] convictions, the district court did not abuse its discretion in denying [petitioner's] motion for new trial." *Fuller*, 421 F. App'x at 645. As the Seventh Circuit has previously noted, and the government instantly explains, evidence Dooley processed was not presented at petitioner's trial.[3] Accordingly, Dooley's conviction was irrelevant to petitioner's bank robbery charges. Petitioner has not presented a "good reason" to reexamine this finding, as he merely restates the contentions of his previously denied motion for new trial. *See Fuller*, 398 F.3d at 648. Accordingly, petitioner's claim that depriving jurors of evidence of Dooley's misconduct and introducing evidence Dooley processed violated his due process rights is barred from review. Alternatively, his contentions are meritless as Dooley's conviction is immaterial to petitioner's bank robbery convictions.

---

[3] Petitioner specifically cites the "bait money" introduced against him at trial. At trial, Officer Jason Simmons, the lead investigator in petitioner's criminal case, stated that he and another officer, Detective Metzler, were the ones who approached the getaway car after the robbery and collected the money which was later identified as bait money from the floorboards and from Bonnie Brown's purse. The government asked Officer Simmons, "[s]o you personally identified that the [money] . . . matched the recorded serial number bills that the bank had recorded on the bait money contained in one of the teller drawers?" Simmons replied, "Yes, ma'am." Transcript of Day Three of Jury Trial at 45-48, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. Aug. 29, 2007). Thus, Dooley was not involved in the collection of the bait money used to tie petitioner to the crime. Further, at a hearing held prior to petitioner's trial, the government stated it would not use evidence that Dooley directly collected, nor would it call Dooley as a witness. Stobbs additionally stated that he had no plans to call Dooley as a witness. Transcript of Motion Hearing at 6-8, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. Aug. 6, 2007). At trial, the government refrained from using evidence Dooley collected and neither party called Dooley as a witness.

Further, petitioner's brief and nonsensical argument that the authorities permitted Bonnie Brown to smoke marijuana during her proffer sessions constituting a bribe and unlawful inducement resulting in false statements against petitioner is utterly false and without merit. Initially, as the government correctly argues, petitioner failed to raise this issue on direct appeal. Thus, the Court is procedurally barred from reaching its merits. *See Belford*, 975 F.2d at 313. Regardless, petitioner's claims are patently frivolous given the affidavit of Officer Simmons attached to the government's response. Officer Simmons states, "[a]t no time, during contact or during the interviews and or proffer sessions with Bonnie Brown, was she allowed to smoke marijuana. Brown was allowed to smoke cigarettes at her request, during interviews that took place with Alton and Granite City Police detectives and Agents with the Federal Bureau of Investigation" (Doc. 10-1). Accordingly, petitioner's second claim for relief is without merit.

### 3. Ground Three: Ineffective Assistance of Counsel: Failure to Investigate Government Witnesses or Challenge Warrantless Searches

Petitioner's third ground for relief alleges various instance of Stobbs' deficient performance. Petitioner contends, "[Stobbs] failed to investigate and discover that government witnesses were changing their story on the witness stand from that previously given to authorities," and that "[Stobbs] refused to challenge warrantless searches and search warrants." Further, petitioner states, "[Stobbs] refused to interview individuals whom the [sic] informed possessed relevant information to [petitioner's] defense." Additionally, petitioner alleges

Stobbs, "refused to investigate and verify the accuracy of the government's evidence, including fingerprint evidence," he "failed to view the various crime scenes and determine the impossibility of certain acts having occurred, which would have impeached the testimony of government witnesses." Finally, petitioner alleges that, "[Stobbs] totally ignored [his] complaints pertaining to inhumane conditions to which officials at the county jail subjected [petitioner] while he was incarcerated during pre-trial detention."

The unsubstantiated and largely conclusory allegations of petitioner's third ground for relief clearly fail to carry his burden of persuasion as to the two elements of the *Strickland* test. *See United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005); *see also United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993) (defendant bears the burden of proof and persuasion to establish ineffective assistance of counsel).

As to the performance prong of *Strickland,* petitioner, "does not identify the specific acts or omissions of counsel" that demonstrate his conduct fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 690. He does not identify the government witnesses to which he refers, nor does he specify the contents of their allegedly discrepant testimony. Further, he does not identify which individuals Stobbs allegedly refused to interview or how their testimony would have proven relevant to his defense, the specific evidence Stobbs refused to verify as accurate, or how the viewing of various crime scenes would have proven the "impossibility" of "certain acts." Thus, as he has not identified specific acts or

omissions, petitioner has clearly not show Stobbs' actions were outside the wide range of professionally competent assistance. *See Miller v. United States*, 183 F. App'x 571, 581 (7th Cir. 2006) (ineffective assistance claims unsubstantiated by an "affidavit setting forth with precision exactly what his counsel did or failed to do that made an outcome in the proceedings" do not meet requisite burden); *see also Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003).

Moreover, the government's response attaches an affidavit of Stobbs. In reference to the allegations of petitioner's third ground for relief Stobbs states,

> I thoroughly reviewed the discovery in [petitioner's] case and prepared for trial. Said preparation included cross-examining [petitioner's] co-defendants who made statements against him. I am unaware of any eyewitness who would have assisted in [petitioner's] defense. The Government presented testimony regarding [petitioner's] presence at two crime scenes and said evidence included a witness observing [petitioner] running down the street with money falling out of his pants as well as fingerprint evidence. Other witnesses recalled observing [petitioner] inside two banks. I filed various motions on [petitioner's] behalf which were denied.

(Doc. 10-2). The presumption is that Stobbs rendered adequate assistance and exercised reasonable professional judgment in making trial strategy decisions. *Meyer*, 234 F.3d at 325. Stobbs' affidavit and this Court's observance of Stobbs' diligent representation of petitioner support this presumption.[4] The vague allegations of petitioner's third ground for relief do not make the necessary showing that Stobbs made errors so serious that he was not functioning as the

---

[4] Notably, the Court, in denying one of petitioner's attempts to receive alternate counsel went so far as to state, "[a]s I can see, . . . [Stobbs] has done a wonderful job. He's pushed this case as far as he can. He's filed every conceivable motion. He's done more than what would be required." Transcript of Motion Hearing at 18, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. Aug. 6, 2007).

counsel guaranteed petitioner under the Sixth Amendment. *Strickland*, 466 U.S. at 680.

Further, as to prejudice, although he asserts Stobbs failed to properly investigate and interview witnesses, verify evidence, view crime scenes, and investigate allegations of torture,[5] petitioner has not provided sufficiently precise information concerning the impact such actions would have has on his proceedings, especially in light of the considerable evidence of his guilt. *Hardamon*, 319 F.3d at 951. Accordingly, the conclusory and unsubstantiated statements concerning petitioner's general complaints as to Stobbs' trial strategy clearly fall well below the burden imposed upon petitioner. *Davenport*, 986 F.2d at 1049.

Finally, petitioner summarily contends that Stobbs failed to challenge warrantless searches and search warrants. Petitioner presumably contends that Stobbs allowed the introduction of evidence obtained in violation of the Fourth Amendment. However, he does not identify the specific warrantless searches and search warrants allegedly at issue, nor does he reference the circumstances surrounding the procurement of specific evidence introduced against him. When a petitioner bases an ineffective assistance claim on the introduction of evidence obtained in violation of the Fourth Amendment, he must also prove, "over and

---

[5] It is unclear to the Court how petitioner's allegations of torture demonstrate Stobb's deficient performance and a resulting prejudice to petitioner. Regardless, the Court is satisfied petitioner's allegations are baseless in light of the affidavit of Sergeant Gibbs of the Alton Police Department. Sergeant Gibbs states, "[a]t no time was [petitioner] disciplined, punished or summarily placed in shackles or restraints at any time for any length of time and for any reason while in custody at the Alton Police Department by any jailer, police officer or other individuals or employees of this agency" (Doc. 10-3).

above his *Strickland* showing, 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" *Johnson v. Thurmer*, 624 F.3d 786, 792-93 (7th Cir. 2010) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)); *see Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010). Petitioner has clearly not met this high burden, as he does not identify the searches, warrants, or evidence at issue. Accordingly, petitioner's third ground for relief is without merit.

### 4. Fourth Claim: Denial of Counsel of Choice and Conflict-free Representation, Contrary to Sixth Amendment

The entirety of petitioner's fourth claim for relief states, "[p]rior to commencement of the jury trial, a conflict developed between petitioner and his attorney. It was brought to the district court's attention when petitioner requested replacement counsel. His was motion was denied, inexplicably." Thus, petitioner contends this Court improperly denied his repeated requests for replacement of trial counsel in violation of the Sixth Amendment.

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Although the accused has the right to *retain* counsel of his choosing, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151; *see also Carlson v. Jess*, 526 F.3d 1018, 1025 (7th Cir. 2008) ("[A]n indigent defendant generally has no right to have his counsel of choice

appointed."). The intent of the Sixth Amendment is only assurance of an effective advocate for each criminal defendant. *Wheat v. United States*, 486 U.S. 153, 159 (1988).

Thus, those unable to retain counsel do not have a cognizable claim under the Sixth Amendment provided an appointed attorney adequately represents them. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("[W]hen a trial court refuses to appoint new counsel, the defendant can only show a denial of a constitutional right if he can establish that his counsel was ultimately ineffective."). As explained above, petitioner has not demonstrated his counsel's ineffectiveness. Accordingly, the mere fact the Court refused petitioner's numerous attempts to receive replacement counsel for petitioner does not amount to a violation of the Sixth Amendment.[6]

Alternatively, to the extent petitioner contends a conflict of interest existed between him and Stobbs, the right to effective assistance of counsel, "includes the right to representation that is free from conflict of interest." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (internal quotation marks and citation omitted). Under the test established in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), a

---

[6] The Court notes petitioner sought Stobbs' withdrawal on three separate occasions; twice by written motion and once through an oral request at a suppression motion hearing (*See* 06-cr-30117, Docs. 151, 218). At the hearing on petitioner's first motion, petitioner stated he did not want any delay attributed to himself. Thus, he withdrew his motion. *See* Transcript of Motion Hearing at 12, 14, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. July 30, 2007). Further, the Court denied petitioner's second motion, as it found Stobbs had, "done more than what would be required," of zealous representation. Transcript of Motion Hearing at 18, *United States v. Fuller,* 06-cr-30117 (S.D. Ill. Aug. 6, 2007). The Court similarly denied petitioner's final motion, filed a little over a week before trial, as it found his reasoning without merit (*See* 06-cr-30117, Doc. 218). Finally, in an attempt to appease petitioner, Stobbs filed a motion to withdraw as counsel on August 21, 2007 (06-cr-30117, Doc. 225). The Court denied Stobbs' motion after a hearing was held (06-cr-30117, Doc. 228). Thus, the Court's repeated refusal to grant petitioner's multiple requests for replacement counsel was reasonable.

petitioner establishes ineffective assistance if he demonstrates that, "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348; *United States v. Lafuente*, 426 F.3d 894, 898 (7th Cir. 2005); *Hall*, 371 F.3d at 973; *Stoia v. United States*, 22 F.3d 766, 770 (7th Cir. 1994). Proving an adverse effect does not require the defendant to demonstrate prejudice; a defendant need only show a reasonable likelihood that counsel's performance would have been different were it not for the conflict. *Lafuente*, 426 F.3d at 898; *Hall*, 371 F.3d at 974; *Stoia,* 22 F.3d at 771. "[A]n actual conflict exists if the defense counsel was faced with a choice between advancing his own interests above those of his client." *Hall*, 371 F.3d at 973. Further, "[a]n *actual* conflict exists when an attorney actively represents incompatible interests; it is more than a 'mere theoretical division of loyalties.'" *United States v. Fuller*, 312 F.3d 287, 291 (7th Cir. 2002) (citing *Mickens v. Taylor*, 535 U.S. 162, 171 (2002)). Stated another way, a potential conflict of interest is insufficient to warrant relief. *Id.* at 291-92.

Petitioner states he brought a conflict to the attention of the Court. Presumably, petitioner refers to the hearing on petitioner's first motion for Stobbs' withdrawal held on July 30, 2007. At the hearing, petitioner stated,

> [Stobbs] doesn't like me . . . I feel it is a conflict of interest of him representing me to [sic]. To the fact that he is from Alton and Alton is not a big city at all. And they're saying I robbed two banks. One bank in Alton, one bank from Granite City. [Stobbs] has kindred that work at the Alton Police Department which can make a brief detriment for him to be representing me. There is a prejudice there. I can't afford it.

Transcript of Motion Hearing at 3-4, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. July 30, 2007). Clearly, these allegations do not amount to an actual conflict of interest. Petitioner's "mere theoretical division of loyalties," does not demonstrate Stobbs' was representing incompatible interests. *Fuller*, 312 F.3d at 291. Regardless, petitioner cannot point to an "adverse effect" this alleged conflict had on Stobbs' representation. Accordingly, petitioner's fourth claim for relief is without merit.

### 5. Fifth Claim: Ineffective Assistance of Counsel for Failing to Present Evidence that Other Suspects Actually Committed the Robbery

Petitioner's fifth claim for relief alleges Stobbs provided ineffective assistance of counsel for, "failing to investigate/present to jury that both banks were robbed a second time while the defendant was incarcerated pending trial, making it possible that these were the same suspects who robbed the banks the firsttime [sic]." Again, the frivolous allegations of petitioner's fifth claim for relief do not meet the high burden imposed upon him under *Strickland*.

"The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of the circumstances." *Kimmelman*, 477 U.S. at 381. Further, a "defendant's lawyer has, it is certainly true, no duty to make a *frivolous* argument; and there is a tactical reason not to make weak arguments . . . they may distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 1993).

Obviously, subsequent robberies of the same banks are not relevant to petitioner's convictions. A jury found petitioner independently guilty beyond a reasonable doubt. In reference to the allegations of petitioner's fifth ground for relief, Stobbs' affidavit states, "I do not believe it would be relevant or even helpful to argue that the banks [petitioner] was convicted of robbing were robbed a second time." Thus, petitioner's claim is clearly without merit, as Stobbs' decision not to raise an irrelevant argument at trial was undoubtedly within the wide range of professionally competent assistance. *Strickland* 466 U.S. at 690. Regardless, petitioner has failed to demonstrate prejudice, as Stobbs' failure to raise an irrelevant argument at trial does not demonstrate petitioner's conviction was "fundamentally unfair" or that the "result [of his trial was] unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Accordingly, petitioner's fifth claim for relief is meritless.

### 6. Ineffective Assistance of Counsel: Failure to Suppress the Testimony of Government's Witness Joyce Pursell

Petitioner's sixth claim alleges, "[Stobbs] was ineffective for failing to file [a] pretrial suppression motion with regards to government wittness [sic] Joyce Purcell [sic]," as Pursell's identification of petitioner was "tainted and unduly suggestive." Petitioner finds it objectionable that Pursell identified petitioner from a photo-array one year after the commission of the bank robbery. Petitioner argues Pursell never saw, "defendant unmasked in the bank['|s drive-thru." Additionally, petitioner states, "[Pursell's] prior statements to the investigating detectives show that she never saw the defendant unmasked in the bank's drive-

thru." Finally, petitioner argues, "no ban[k] DVD footage was produced to show that [Pursell] was even in the drive-thru at the time of the robbery."

Petitioner states counsel was ineffective for failing to suppress Pursell's statements. However, Stobbs correctly relates in his affidavit that he, "would not have standing to try and file a Motion to Suppress for what Joyce Purcell [sic] or for what another witness said." Further, he states, "I cross-examined witnesses who I believe gave testimony which was contradictory" (Doc. 10-2, p. 2).

The Court construes petitioner's sixth claim for relief as a claim for ineffective assistance of counsel for not challenging the photo array. "Eyewitness identification testimony can violate a defendant's constitutional right to due process of law when it creates a 'substantial likelihood of irreparable misidentification.'" *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1044 (7th Cir. 2003) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (additional citations and quotations omitted)). The Seventh Circuit undertakes a two-step analysis to determine the constitutionality of an identification procedure. *Id.* at 1045 (citing *McGowan v. Miller*, 109 F.3d 1168, 1173 (7th Cir. 1997)). Initially, the petitioner must demonstrate the identification procedure was unduly suggestive. *Id.* (citing *United States v. Traeger*, 289 F.3d 461, 473-74 (7th Cir. 2002). Once that burden is met, the court must then determine, under the "totality of the circumstances," whether the identification was sufficiently reliable to prevent misidentification. *Id.* (citing *Traeger*, 289 F.3d at 473-74; *United States v.*

*Harris*, 281 F.3d 667, 670 (7th Cir. 2002)).  As to reliability, courts consider the following factors:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Id.* (quoting *Biggers*, 409 U.S. at 199-200).

In addition to petitioner's argument concerning Pursell's photo-array identification of petitioner, he contends that the government did not produce a DVD of Pursell at the bank's drive-thru on the day of the robbery.  However, the government produced photographs of Pursell in the drive-thru of the bank at the time of the robbery. Transcript of Day Two of Jury Trial at 72, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. Aug. 28, 2007); Govt. Ex. 32B.  Further, Pursell testified that she was in the drive-thru the day of the robbery, witnessed two black men walk past her car toward the bank, including petitioner, and subsequently witnessed the same two men leaving the bank after robbing it, petitioner with money falling out of his hands and onto the ground.  *Id.* at 72-77. Accordingly, petitioner's argument concerning the sufficiency of the government's evidence, namely, the fact it did not produce a DVD, is irrelevant to petitioner's contentions that Stobbs' failure to challenge the photo array amounts to ineffective assistance of counsel.

As to the merits of petitioner's claim, prior to petitioner's criminal trial, Stobbs reviewed the photo arrays shown to witnesses Joyce Pursell and Linda

Luffman and filed a motion challenging the array (06-cr-30117, Doc. 163). Generally, Stobbs argued the photo array was unduly and unnecessarily suggestive, as the photos were significantly dissimilar to defendant in physical appearance. The government's response argued the photo array was not unduly suggestive, as the array showed, "six people of the same ethnicity, roughly the same height (71.5 to 74.5 inches), roughly the same age (born 1978-1983), and posed uniformly with a similar expression" (06-cr-30117, Doc. 179, p. 2). At the hearing held on the motion, Stobbs related that since the filing of the motion, the government had sent him "the colored lineup." Transcript of Motion Hearing at 20, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. Aug. 6, 2007). Thus, based on his viewing of the color photo array, Stobbs withdrew the motion stating, "I don't think in good faith I can make that motion." *Id.*

Thus, the record reflects that Stobbs did in fact challenge the photo array. However, he withdrew his motion, as he did not feel he could make his argument in good faith. Petitioner challenges Stobbs' decision to withdraw the motion. However, petitioner has not alleged facts or circumstances that demonstrate Stobbs' decision was not within the wide range of professionally competent assistance. *Strickland* 466 U.S. at 690. Again, the Court reiterates, Stobbs was not obliged to make arguments he felt were weak or without merit. *See Rezin*, 322 F.3d at 446. Upon reviewing the color photo array, Stobbs clearly felt it was not unduly suggestive. Petitioner has not met his burden of demonstrating that this decision "fell below an objective standard of reasonableness." Regardless,

petitioner again fails to demonstrate a resulting prejudice from Stobbs' decision to withdraw the photo array challenge, especially in light of the considerable evidence of his guilt. *Strickland* 466 U.S. at 690.

### 7. Ineffective Assistance of Counsel: Failure to File Motion for New Trial After Discovery of New Evidence

Petitoner's final claim for relief alleges, "[t]rial counsel was ineffective for failing to file motion for a new trial after [petitioner's] trial on grounds of newly discovered evidence, that government wittness [sic] Joyce Pur[s]ell['s] identification of [petitioner] was tainted and unduly suggestive."  The entirety of petitioner's supportive allegations state,

> During [petitioner's] trial government wittness [sic] Joyce Pur[s]ell, testified to the jury that the FBI and the United States Attorney asked her to see if she could make a identification of the bank robbers they also told her before the identification of the defendant you know about the changes and this and that.  Moreover, [Pursell], testified that the government showed her a picture of the defendant not a photo-array that the government alleges that she made the identification of the defendant from.

The government correctly responds that petitioner's incoherent and unsubstantiated allegations are clearly insufficient to rebut "the strong presumption" that petitioner's counsel rendered adequate representation. *Meyer*, 234 F.3d at 325.  As stated above, Pursell testified at trial that she was in the bank drive thru lane when she witnessed two black men walk by and return with money. Transcript of Day Two of Jury Trial at 73, *United States v. Fuller*, 06-cr-30117 (S.D. Ill. Aug. 28, 2007).  Further, she testified the two men were wearing white t-shirts and blue jeans and that their faces were not covered. *Id.*

Additionally, she stated they had, "like blue masks . .. or, you know, like winter caps, . . . on top of the head." *Id.* at 74. Pursell testified that they carried money in their hands and that she turned to her daughter and said, "[m]y God, they robbed the bank." *Id.* at 73. The government showed Pursell the photo array from which she previously identified petitioner. *Id.* at 75-76. Pursell testified that she was shown this array prior to trial and asked if she could identify the individuals she witnessed walk in front of her car. *Id.* Pursell identified petitioner as one of the men carrying money. *Id.* at 76. At trial, Pursell identified her initials on the photo array, illustrating that she had previously identified petitioner as one of the individuals who walked by her car carrying money. *Id.*

On cross-examination, Stobbs relevantly questioned Pursell concerning her photo-array identification, citing the fact that Pursell identified petitioner a few weeks before trial and well over a year from the date of the robbery. *Id.* at 83-84. Thus, as stated previously, Stobbs addressed the validity of the photo-array identification in pretrial motions, as well as at trial. Petitioner has not alleged facts demonstrating Stobbs' cross-examination of Pursell, "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 694. Accordingly, to the extent that petitioner's final claim for relief again challenges the sufficiency of Stobbs' performance in relation to Pursell's identification both prior to and during trial, petitioner has clearly not met his burden as to either prong of *Strickland. Strickland*, 466 U.S. at 694.

Moreover, petitioner alleges knowledge of "newly discovered evidence," in relation to Pursell's statements at trial. However, the Court is unable to discern the substance of the alleged evidence. Thus, petitioner's fragmented and incomplete allegations do not demonstrate the existence of evidence that "(1) came to his knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). As petitioner has not adequately alleged the existence of newly discovered evidence, Stobbs' failure to file a motion for new trial based on such evidence was clearly professionally reasonable. Further, Robert Elovitz, counsel appointed to represent petitioner at his sentencing, states, "at no time did [petitioner] ask [him] to make a motion for new trial, for any reason. At no time did the defendant make the undersigned aware of any newly discovered evidence" (Doc. 10-4). Accordingly, the performance of both Stobbs and Elovitz in relation to Pursell's identification of petitioner was reasonable. Further, petitioner once again fails to cite prejudice resulting from the allegedly deficient performance of either Stobbs or Elovitz. *Strickland* 466 U.S. at 690. Thus, petitioner's seventh claim for relief is without merit.

### III.    Motion for Evidentiary Hearing Denied

Petitioner has separately filed a motion for an evidentiary hearing on his § 2255 petition (Doc. 21). The relevant portions of petitioner's motion relate to his

second claim for relief, in which he alleges the introduction of unreliable evidence and testimony denied him due process and a fair trial.  Petitioner attaches various documents relating to Dooley's involvement in petitioner's criminal investigation (*See* Docs. 21-1, 22-2).  However, as the Seventh Circuit previously noted, and the Court again reiterates, Dooley's illegal conduct is immaterial to petitioner's convictions. *Fuller*, 421 F. App'x at 645.  Accordingly, documents relating to Dooley's limited involvement in the criminal investigation of petitioner's illegal conduct do not demonstrate a basis for relief under § 2255.

Having closely examined the record before it, the Court concludes petitioner's claims do not warrant an evidentiary hearing.  *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion); *Oliver v. United States*, 961 F.2d 1339, 1343 n. 5 (7th Cir. 1992) (finding a court need not hold an evidentiary hearing to decide § 2255 claims that raise factual matters capable of being resolved on the existing record), *cert. denied*, 506 U.S. 976 (1992).  *See also* Rules 4(b) and 8(a) of RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS; *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989) (determining a judge should dismiss a §

2255 petition without a hearing, if it appears from the facts of the motion, exhibits, and prior proceedings in the case that the movant is not entitled to relief).  Accordingly, petitioner's motion for evidentiary hearing is **DENIED** (Doc. 21).

## IV.    Certificate of Appealability Denied

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted.  *See Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009).  A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Where a district denies a *habeas* petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

As to petitioner's first claim for relief, reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing the merits of petitioner's claim. Reasonable jurists would similarly conclude that petitioner's second claim is barred from review, and alternatively, that petitioner has not presented a denial of a constitutional right. As to petitioner's claims three through seven, reasonable jurists could not debate that the petition should have been resolved in a different manner, as petitioner's claims of ineffective assistance of counsel do not present evidence of constitutionally deficient attorney performance; nor do they demonstrate resulting prejudice. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## V. Conclusion

For the reasons set forth above, petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence is **DENIED** (Doc. 1). Thus, petitioner's claims are **DISMISSED WITH PREJUDICE**. Further, petitioner's motion for evidentiary hearing is **DENIED** (Doc. 21). Finally, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 22nd day of May, 2012.

Digitally signed by
David R. Herndon
Date: 2012.05.22
12:00:00 -05'00'

**Chief Judge**
**United States District Court**